UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ADA POLANCO, THELMA POLANCO-PEREZ, ROY A. POLANCO, <br><br> Plaintiffs, <br><br> vs. <br><br> EAST CHIGAGO MACHINE TOOL CORP.; BALEMASTER; MACY'S INC.; MACY'S STORES OF CALIFORNIA; and DOES 1 to 50, inclusive, <br><br> Defendants. | CASE NO. CV 11-08927 MMM (MRWx) <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT |

On July 12, 2011, plaintiffs Maria Polanco, Thelma Polanco-Perez, and Roy Polanco commenced this action in Los Angeles Superior Court.[1] Defendant East Chicago Machine Tool Corporation removed the action on October 27, 2011.[2] Two months later, on December 22, 2011,

---

[1] East Chicago Machine Tool Corporation's Notice of Removal of Action ("Removal"), Docket No. 1 (Oct. 27, 2011), Exh. A ("Complaint").

[2] The remaining defendants signed declarations consenting to removal.

plaintiffs filed a second amended complaint.[3] On January 6, 2012, defendant Macy's Logistics and Operations filed a motion to dismiss that complaint,[4] which the court granted on June 26, 2012.[5] Plaintiff thereafter filed a third amended complaint,[6] which Macy's moved to dismiss on July 23, 2012.[7] Plaintiffs oppose the motion.[8]

## I. FACTUAL BACKGROUND

Roy Polanco was allegedly employed by Macy's at one of the company's stores in Los Angeles.[9] The company owned a Balemaster Series 1600 "Balewel" baler.[10] Plaintiffs allege that the baler, manufactured by defendant East Chicago, was defective and had inadequate warnings.[11] Macy's purportedly made the product more dangerous by blocking an electric "eye" on the baler, which allowed it to cycle continuously.[12] Macy's also purportedly constructed a series of wooden steps and a platform to facilitate access to the entry chute of the baler, in violation of East

---

[3] Plaintiff's Second Amended Complaint for Wrongful Death, Docket No. 13 (Dec. 22, 2011).

[4] Motion by Defendant Macy's to Dismiss Second Amended Complaint, Docket No. 15 (Jan. 6, 2012); Defendant Macy's Reply to Opposition to Motion to Dismiss Second Amended Complaint, Docket No. 23 (Feb. 14, 2012).

[5] Order Granting Defendant's Motion to Dismiss, Docket No. 26 (June 26, 2012).

[6] Third Amended Complaint for Wrongful Death ("TAC"), Docket No. 31 (July 10, 2012).

[7] Macy's Motion to Dismiss Third Amended Complaint ("Motion"), Docket No. 32 (July 23, 2012).

[8] Opposition to Motion to Dismiss Third Amended Complaint ("Opp."), Docket No. 37 (Aug. 16, 2012).

[9] TAC, ¶ 3

[10] *Id.*, ¶¶ 11,16.

[11] *Id.*, ¶¶ 20-29.

[12] *Id.*, ¶ 36,52.

Chicago's instructions for operation of the machine.[13] On July 13, 2009, when Roy Polanco was operating the baler, he fell into it and was killed.[14]

Plaintiffs asserted a products liability claim against East Chicago and a negligence claim against Macy's.[15] On August 3, 2012, the court entered a stipulated order dismissing plaintiffs' claims against East Chicago with prejudice.[16] Plaintiffs seek to recover damages for loss of financial support; loss of gifts and/or benefits; funeral and burial expenses; the reasonable value of household services; loss of consortium; and loss of love, companionship, comfort, care, assistance, protection, society, affection, and moral support from Macy's.[17]

## II. DISCUSSION

### A.  Legal Standard Governing Motions to Dismiss under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). It need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

---

[13]*Id.*, ¶ 45.

[14]*Id.*, ¶ 4.

[15]*Id.*, ¶¶ 13-51.

[16]Order Granting Dismissal of East Chicago Machine Tool Corporation, Docket No. 36 (Aug. 3, 2012).

[17]TAC at 12.

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*). The manner in which the court assesses the adequacy and plausibility of a plaintiff's allegations is described in *Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010), where the court said:

> "For purposes of our review, we begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. We disregard threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. After eliminating such unsupported legal conclusions, we identify well-pleaded factual allegations, which we assume to be true, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1003 (citations and quotation marks omitted).

**B.     Whether the Baler Was a "Power Press" under Section 4558**

In most cases, the Worker's Compensation Act, California Labor Code §§ 3200 et seq., provides the exclusive remedy for claims by an employee against his or her employer for injuries that occur during the course of employment. Labor Code § 3600 states:

> "Liability for the compensation provided by this division, in lieu of any other

4

liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment. . . ." CAL. LAB. CODE § 3600.

Plaintiffs assert that their action is not precluded by Labor Code § 3600 because it arises under the statutory exception for claims set forth in Labor Code § 4558.

Under § 4558, "[a]n employee, or his or her dependents in the event of the employee's death, may bring an action at law for damages against the employer where the employee's injury or death is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death." CAL. LAB. CODE § 4558(b); *Flowmaster, Inc. v. Superior Court*, 16 Cal.App.4th 1019, 1029 (1993) ("[T]he Legislature has determined that recovery for injuries incurred during the course and scope of employment is limited to workers' compensation benefits, but at the same time has recognized that employees who must use power presses, such as plaintiff, potentially require additional protection and compensation from the employer in a civil action in the event of injury.").

The parties agree that the disposition of this motion turns on a single question: whether the baler that killed Roy Polanco is a "power press" as required by § 4558.[18] Section 4558 defines a "power press" as "any material-forming machine that utilizes a die which is designed for use in the manufacture of other products." CAL. LAB. CODE § 4558(1)(4). "This statutory definition embraces four elements. 'The power press itself is a machine. It is a machine that forms materials. The formation of materials is effectuated with a die. Finally, the materials being formed with the die are being formed in the manufacture of other products.'" *McCoy v. Zahniser Graphics, Inc.*, 39 Cal.App.4th 107, 110 (1995) (quoting *Ceja v. J.R. Owen*, 196 Cal.App.3d 1372, 1376 (1987)). It is the fourth element that is in dispute here: defendant argues that the baler

---

[18]Motion at 2; Opp. at 5.

5

does not manufacture any "products," while plaintiff argues that the corrugated cardboard cubes the baler creates are manufactured "products."

As the court stated in its previous order, the word "products" in § 4558 does not encompass every item created by a machine utilizing a die; the word "product" would do no work under such an interpretation of the statute, because any machine inevitably produces something.[19] In the prior order, the court reasoned that the word "products" must be read in the context of the statute's phrase "designed for use in the manufacture of other products." CAL. LAB. CODE § 4558(1)(4). Because the word "manufacture" means "to make (as raw material) into a product suitable for use," WEBSTER'S THIRD INTERNATIONAL DICTIONARY at 1378, the court concluded that the word "products" in § 4558 refers specifically to "items or goods suitable for use."[20] Under this interpretation, the baler is a "power press" only if it is a machine that manufactures "items or goods suitable for use."

Plaintiffs' second amended complaint alleged no facts indicating that the baler manufactured "items or goods suitable for use." It implicitly conceded that the baler created cubes of cardboard solely for ease in storing, disposing, or recycling. Accordingly, the court concluded as a matter of law that plaintiffs had failed to allege that the baler made "products" such that it could qualify as a "power press" under § 4558.

In their third amended complaint, plaintiffs allege that defendant sells the cardboard cubes to processing plants, an allegation that was not included in their original complaint.[21] They also identify an additional "use" for the cardboard cubes: that processing plants use the cardboard cubes to make products such as paper, utensils, serveware, dishware, containers, etc.[22]

Defendant argues that plaintiffs' additional allegations do not show that the baler falls

---

[19] MTD Order at 11.

[20] Id. (citing Webster's Third New International Dictionary at 1378 (defining "manufacture")).

[21] TAC, ¶ 17.

[22] Id., ¶ 32.

6

within § 4558's definition of a "power press." It contends that the court has already held that the bales of cardboard are not "products." When the court decided defendant's last motion to dismiss, however, the operative complaint did not allege that defendant sold the cardboard cubes after creating them, nor that other entities used the cardboard cubes defendant sold to them.[23] These new allegations could be interpreted to mean that the cardboard cubes are items or goods suitable for a use other than defendant's own ease of storage, disposal, or recycling, making them "products" as that term is used in § 4558. Plaintiffs' allegations also suggest that the cardboard cubes are "products" according to the legal definition of that word. See BLACK'S LAW DICTIONARY (9th ed. 2009) (defining a "product" as "something that is distributed commercially for use or consumption" and that is "(1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption").[24]

Defendant cites *McCoy*, 39 Cal.App.4th 107, in which the court held that a printing press was not a "power press" because it "did not *form* materials to be used in the manufacture of other products [but] merely imprint[ed] images on paper." *Id*. at 111 (emphasis original). It argues that the baler, like the printing press, does not form materials to be used in the manufacture of other products. Plaintiffs' third amended complaint, however, alleges specifically that the baler "forms" material (cardboard) by condensing and binding it, and in doing so, manufactures a product (the condensed cardboard cubes). Defendant's argument essentially disputes the veracity of plaintiffs' factual allegations. The court cannot, on a motion to dismiss, resolve such a factual dispute. *Cahill*, 80 F.3d at 337-38 (the court assumes the truth of plaintiff's allegations on a motion to dismiss).

In light of plaintiffs' new allegations concerning the cardboard cubes created by the baler,

---

[23]See MTD Order at 11 ("Plaintiffs' complaint does not state the manner in which the baler that killed Roy Polanco was used.").

[24]The second amended complaint did not contain allegations indicating that the cardboard cubes fit this definition of a "product." Specifically, it did not allege that defendant distributed the cubes commercially for later use or consumption.

the court concludes that whether the cubes are "products" is a factual determination best resolved at a later stage of the proceedings. In *Islas v. D&G Mfg. Co.*, 120 Cal.App.4th 571, 575 (2004), a case in which the issue was whether a machine used a "die," the California Court of Appeals held that whether the machine was a "power press" was an issue of fact that was best decided by the jury. *Id.* at 579-80 (reversing an order of dismissal, because a reasonable fact finder could have inferred that the machine used a die).[25] Whether the baler in this case is a "power press" turns on a similar factual determination as to whether the cubes it creates are "items or goods suitable for use," as plaintiffs now allege. Defendant argues that the court, not the jury, must determine whether a particular machine fits § 4558's definition of a "power press." While the definition of a "power press" is a question of statutory interpretation that lies within the "distinct and exclusive province of the trial judge," see *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F.Supp.2d 1037, 1042 (D. Ariz. 2005), whether this particular baler meets that definition is a question of fact. See *Islas*, 120 Cal.App.4th at 578 *(*"[T]he application of a statutory term to a specific set of facts is a question of fact for the jury, unless the material facts are undisputed and no conflicting inferences can reasonably be drawn from these facts," citing *Judd v. Letts*, 158 Cal. 359, 365 (1910); *People v. Bain*, 5 Cal.3d 839, 851 (1971); 9 B. WITKIN, CAL. PROCEDURE, Appeal, §§ 370-72, pp. 420-23 (4th ed. 1997)).[26]

---

[25]*Islas* is not contrary to *Rosales v. Depuy Ace Medical Co.*, 22 Cal.4th 279 (2000), because in *Rosales*, the California Supreme Court found, as a matter of law, that a particular cutting tool was not a power press following resolution of a motion for summary judgment in the trial court. 22 Cal.4th at 281. *Rosales* did not hold that where material facts are in dispute, the court may decide the issue.

[26]In its order dismissing plaintiffs' second amended complaint, the court stated that whether the baler qualified as a "power press" was a question of statutory interpretation. (MTD Order at 12). As noted, plaintiffs' second amended complaint did not attempt to allege that the baler created items or goods suitable for use. (MTD Order at 11). Rather, plaintiffs erroneously argued that a "product" is anything "resulting from or necessarily following from a set of conditions." (See MTD Order at 10). No conflicting inferences could be drawn from the facts alleged in the second amended complaint as to whether the baler created items or goods for use; as a result, the court dismissed the pleading as deficient on its face. By contrast, a reasonable factfinder could determine that the cardboard cubes created by the baler constitute items or goods

### III. CONCLUSION

For the foregoing reasons, the court denies defendant's motion to dismiss.

DATED: September 18, 2012

*/s/ Margaret M. Morrow*
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

for use if plaintiffs are able to prove the allegations in the third amended complaint. Cf. *Islas*, 120 Cal.App.4th at 579-80 (whether a machine was a power press was a question for the jury because reasonable factfinders could differ as to whether the machine used a die).