JEFFREY M. LENKOV, ESQ. (SBN 156478)
SEVAN GOBEL, ESQ. (SBN 221768)
MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
15th Floor at 801 Tower
801 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 624-6900
Facsimile: (213) 624-6999
Email: jml@manningllp.com/sxg@manningllp.com

Attorneys for Defendant Macy's Logistics and Operations, an unincorporated division of Macy's Corporate Services, Inc. (erroneously sued and served as "Macy's, Inc." and "Macy's Stores of California")

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ADA POLANCO, THELMA POLANCO-PEREZ, ROY A. POLANCO, <br><br> Plaintiff, <br><br> vs. <br><br> EAST CHICAGO MACHINE TOOL CORP.; BALEMASTER; MACY'S INC.; MACY'S STORES OF CALIFORNIA; and DOES 1 to 50, inclusive, <br><br> Defendants. | Case No. 2:11-CV-08927-MMM-MRW <br><br> **NOTICE OF MOTION AND MOTION BY DEFENDANT MACY'S FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Statement of Uncontroverted Facts and Conclusions of Law, Appendix of Evidence, and Proposed Order filed concurrently] <br><br> Date:  May 20, 2013 <br> Time: 10:00 AM <br> Ctrm: 780 |

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 20, 2013, at 10:00 AM, in Courtroom 780 of the above-captioned court, located at 255 East Temple Street, Los Angeles, CA, 90012, Defendant  Macy's Logistics and Operations, an unincorporated division of Macy's Corporate Services, Inc. (hereinafter "Macy's") will move for summary judgment on Plaintiffs' Third Amended Complaint.

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

1

Macy's is entitled to have judgment entered in its favor because Plaintiff's claims are barred by the exclusive remedy of workers' compensation.  The power press exception set forth in California Labor Code §4558 does not apply because:

1.  The Balewell Baler at issue here does not meet the statutory definition of a power press because it does not use a die that permanently "imparts shape to material by... punching, stamping or extruding," which then in this altered shape becomes part of some other product.  *Rosales v. Depuy Ace Medical Co.*, 22 Cal. 4th 279, 285 (2000); *see also Moreno v. Alstom Power*, 365 Fed. Appx. 861, 862 (9th Cir. 2010) (citing *Rosales*, affirming summary judgment that wallboard-making machine does not qualify under Lab. Code § 4558, so workers' compensation exclusivity bars plaintiff's claims); and

2.  Plaintiffs cannot prove that Roy Polanco's death was proximately caused by the removal of a point of operation guard, as required by California Labor Code §4588(b), as Macy's modification to the baler did not result in the removal of a point of operation guard that was intended to "accomplish the goal of restraining workers from inadvertently reaching into the point of operation."  *Bingham v. CTS Corp.*, 231 Cal. App. 3d 56, 65 (1991).

This motion is being made following the conference of counsel on November 26, 2012, as required by Local Rule 7-3.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Separate Statement of Uncontroverted Facts and Conclusions of Law, and Appendix of Evidence, filed concurrently, the papers and records on file with this Court, and on such other and further matter that the Court may accept at the hearing on this Motion.

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

2

1    Dated: March 8, 2013                     MANNING & KASS
                                             ELLROD, RAMIREZ, TRESTER LLP
2
                                             By:    /s/ Jeffrey M. Lenkov
3                                                   Jeffrey M. Lenkov
                                                   Sevan Gobel
4
                                             Attorneys for Defendant Macy's
5                                            Logistics and Operations, an
                                             unincorporated division of Macy's
6                                            Corporate Services, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

3

# TABLE OF CONTENTS

*Page*

1.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   STATEMENT OF UNCONTROVERTED FACTS. . . . . . . . . . . . . . . . . . . . 1

3.   THE EXCLUSIVE REMEDY OF WORKERS' COMPENSATION BARS
     PLAINTIFFS' CLAIM UNLESS AN EXCEPTION APPLIES. . . . . . . . . . . 5

4.   PLAINTIFFS CANNOT PROVE THAT THE POWER PRESS EXCEPTION
     SET FORTH IN SECTION 4558 APPLIES. . . . . . . . . . . . . . . . . . . . . . . . . 5

4.1  Plaintiffs Must Prove Their Claims Satisfy the Narrow Power Press Exception
     to Workers' Compensation Exclusivity in Section 4558. . . . . . . . . . . . . . . 5

4.2  The Baler Does Not Meet Section 4558's Definition of a Power Press. . . . . . 7

4.3  The Baler Does Not Contain a Die. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4.4  The Cardboard Passed Through the Baler Is Not Permanently
     Altered in Shape. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4.5  The Bales of Cardboard Created By The Baler Are Not Part of Another
     Product. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

4.6  There is No Uniformity In The Output of the Baler. . . . . . . . . . . . . . . . . 10

5.   PLAINTIFFS CANNOT PROVE THAT DECEDENT'S DEATH WAS
     PROXIMATELY CAUSED BY THE REMOVAL OF A POINT OF
     OPERATION GUARD, AS REQUIRED BY SECTION 4558(b) . . . . . . . . 11

6.   POWER PRESSES AND BALERS ARE REGULATED BY TWO DISTINCT
     STATUTORY SCHEMES AND INDUSTRY STANDARDS. . . . . . . . . . . 14

7.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

i

# TABLE OF AUTHORITIES

*Page*

## CASES

*Award Metals, Inc. v. Superior Court,* (1991) 228 Cal. App. 3d 1128 (1991). . . . . . .

*Bingham v. CTS Corp.,* 231 Cal. App. 3d 56 (1991). . . . . . . . . . . . . . . . . . . . . . . . . .

*Ceja v. J. R. Wood, Inc.,* 196 Cal. App. 3d 1372 (1987) . . . . . . . . . . . . . . . . . . . . . .

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,* 24 Cal. 4th 800 (2001). . . . .

*Jones v. Keppeler,* 228 Cal. App. 3d 705 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . .

*LeFiell Manufacturing Co. v. Superior Court,* 55 Cal. 4th 275 (2012). . . . . . . . . . . .

*Moreno v. Alstom Power,* 365 Fed. Appx. 861 (9th Cir. 2010) . . . . . . . . . . . . . . . . . .

*NLRB v. Bell Aerospace Co. Div. Textron Inc.,* 416 U.S. 267 (1974). . . . . . . . . . . . .

*Rosales v. Depuy Ace Medical Co.,* 22 Cal. 4th 279 (2000). . . . . . . . . . . . . . . . . . . .

*Saldana v. Globe-Weis Systems Co.,* 233 Cal.App.3d 1505 (1991). . . . . . . . . . . . . . .

*Shoemaker v. Myers,* 52 Cal. 3d 1 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Swanson v. Matthews Prods.,* 175 Cal. App. 3d 901 (1985) . . . . . . . . . . . . . . . . . . . .

## STATUTES

8 California Code of Regulations, Title 55, §§4189-4216 . . . . . . . . . . . . . . . . . . . . .

8 California Code of Regulations, Title 61, §§4350-4355. . . . . . . . . . . . . . . . . . . . . .

California Labor Code §3600. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

California Labor Code §4588. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

Plaintiffs Maria Ada Polanco, Thelma Polanco-Perez and Roy A. Polanco are the surviving spouse and children of Roy Polanco, an employee of Defendant Macy's.  Mr. Polanco was found dead on the job inside a Balewell Baler, a machine he had operated for many years.  As Mr. Polanco was killed on the job, his survivors' claims against Macy's presumably would be the exclusive remedy doctrine for California worker's compensation.   Plaintiffs, however, assert that their claims fit into the narrow "power press" exception to workers' compensation exclusivity set forth in California Labor Code §4558.

As set forth below, the "power press" exception does not apply because the cardboard baler at issue here does not satisfy the statutory definition of a "power press" set forth in California Labor Code §4558.  Specifically, the baler does not use a die, does not permanently impart a shape to the material placed in the machine, and does not create anything used as part of another product.  Furthermore, even if the baler did meet the definition of "power press," Plaintiffs are also required to prove that Macy's knowingly removed a "point of operation guard" from the machine, and that this removal proximately caused the injury.  Plaintiffs, however, cannot do so.

Plaintiffs' claims, therefore, are barred as a matter of law, and Macy's is entitled to judgment.

## 2.   STATEMENT OF UNCONTROVERTED FACTS

Macy's sets forth the following Uncontroverted Facts [UF] in the accompanying Statement of Uncontroverted Facts:

Plaintiffs' decedent Roy Polanco was employed by Macy's at the time of his death. [UF 1].  One of the job tasks assigned to Polanco was to operate a Balewell Baler, a machine that compresses scrap cardboard from old boxes and other sources into bales that were bound and then transported to cardboard recyclers. [UF 2].

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

1

On July 13, 2009, Roy Polanco fell or otherwise went into the operative portion of the baler, and was crushed to death.  [UF 3].  The baler uses a hydraulic ram equipped with a plate to compress inserted cardboard boxes into a cube, which is thereafter bound by the machine to form a bale.  [UF 4].  Exhibit "E" is a photograph of a bale formed by the operation of the baler. [UF 5].

The baler is not equipped with a die, as the California Supreme Court has defined a die in *Rosales v. Depuy Ace Medical Co.* (2000) 22 Cal.4th 279. [UF 6]. The baler does not contain any tool which imparts the shape of the tool to the cardboard by pressing or impacting against or through the cardboard by punching, stamping or extruding.  [UF 7].  No shape is imparted to the cardboard through the use of the baler.  Rather, the baler takes the existing shape <u>out</u> of the cardboard box by flattening it for ease in disposing of the boxes.   [UF 8].

The component of the baler which comes into contact with the cardboard is the plate, which is flat and imparts no specific shape.   There is no such thing as a flat die.  [UF 9].  The materials formed by the baler – the bales of compressed cardboard – are not being formed in the manufacture of other products.  Baled cardboard is either (1) disposed of as trash, or (2) recycled into raw material which may thereafter be used to create another product.  However, the bales themselves are not directly used as a component of another manufactured product.  [UF 10]

The California Code of Regulations contains two distinct sections governing power presses and balers.  [UF 11].  Regulations concerning power presses are set forth in 8 California Code of Regulations, Title 55, §§4189-4216.  8 CCR §4189 states that: "The requirements of this article apply only to those mechanically or hydraulically powered machines that shear, punch, form, or assemble metal or other material by means of tools or dies attached to slides, commonly referred to as power operated presses."  [UF 12]

Regulations concerning compaction equipment are set forth in 8 California Code of Regulations, Title 61, §§4350-4355.  8 CCR §4351 defines a baler as "a

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

2

form of compaction equipment which compresses loose material into compact bales and secures them for binding or wrapping." Unlike power presses, the definition of a baler does not include a die as a component thereof. [UF 13]

Given the different definitions and statutory schemes of a power press and a baler, a baler is not considered to be a power press under the California Code of Regulations. [UF 14].

The American National Standards Institute (ANSI) is a voluntary organization that promulgates the manufacturing standards for machines, including power presses and balers, to which all manufacturers adhere in their manufacture of machines. [UF 15]. ANSI has promulgated three separate standards which encompass all power presses: B11.1 [mechanical power presses], B11.2 [hydraulic power presses], B11.3 [press brakes]. [UF 16]. All of these three standards contain a definition of a die. The definition of a die in B.11.1 (at section 3.23) and B.11.2 (at section 3.11) is identical: "the tooling used in a press for shearing, punching, forming, drawing or assembling metal or other materials." The definition in B.11.3 (at section 3.11) is similar: "The tooling used in a press brake to form the material." [UF 17].

ANSI has two separate standards for stationary compactors (Z245.2) and baling equipment (ANSI Z245.5). Neither of these standards contains a definition of a die or refers to a die as being a component of a baler or a paper box compactor. [UF 18]. ANSI, therefore, does not consider stationary compactors or other baling equipment to be a power press. [UF 19]

Macy's sells bales of used cardboard to Rock-Tenn Company. [UF 20]. The fact that the cardboard has been baled is immaterial to the transaction, as RockTenn does not used the bales themselves as a component of another product. [UF 21]. Rather, upon receipt of the bales, RockTenn removes the binding material from the bales, and thereafter processes the used cardboard into a new raw material. This raw material is thereafter used as a component of other new products. [UF 22]

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

3

Plaintiffs allege that Macy's violated Title 8, California Code of Regulations section 4353, by removing and/or failing to install required point of operation guards on the baler, and that said failure was the proximate cause of Roy Polanco's death. [UF 23]. The Balewell Baler was modified by Macy's by removing a portion of the hopper and adding a chute leading to the compression area. [UF 24].

In addition to the death benefits they were awarded in the Workers' Compensation proceedings relating to Roy Polanco's death (Case No. ADJ6881589), Plaintiffs Mario Polanco and Roy A. Polanco sought increased benefits pursuant to Labor Code §4553 due to alleged serious and willful misconduct by Macy's for failure to have, on the baler, a "point of operation guard or cover, deadman controls or other means that would positively prevent the employee from entering the zone of travel of the ram while in operation," as required by Title 8, California Code of Regulations section 4353. [UF 25].

The Workers' Compensation Judge stated in her Opinion on Decision that there was no "serious and willful misconduct" by Macy's in connection with this incident because she could not find that Macy's violated the safety order set forth in Title 8, California Code of Regulations section 4353; that the violation of the safety order was the proximate cause of Mr. Polanco's death; or that Macy's conduct rose to an intentional act to harm Mr. Polanco by violating a safety order. [UF 26]

The Los Angeles Police Department presented to the scene of Mr. Polanco's death and conducted an investigation. It came across no evidence that Macy's intentionally and knowingly did something to the baler to cause Mr. Polanco's death, that Macy's intentionally modified the machine so as to cause Mr. Polanco's death, or that any employee of Macy's knew that the configuration of the Machine created a possibility of serious injury or death. [UF 27]

Plaintiffs have no personal knowledge that Macy's modifications to the baler (including, but not limited to, the removal and/or failure to install required point of operation guards) caused Roy Polanco's death, or that Macy's knew that its

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

4

modifications to the baler (including, but not limited to, the removal and/or failure to install required point of operation guards) exposed its employees to the risk of serious injury or death. [UF 28]

Cal/OSHA investigated Mr. Polanco's accident, and in the course of its investigation, could not determine how Mr. Polanco ended up in the baler, and came across no information that any Macy's employee knew that Macy's was in violation of any Cal/OSHA standard with respect to the baler. [UF 29]

## 3.   THE EXCLUSIVE REMEDY OF WORKERS' COMPENSATION BARS PLAINTIFFS' CLAIM UNLESS AN EXCEPTION APPLIES

Under California law, workers' compensation is generally the exclusive remedy of an employee and his or her dependents against the employer for work-related injuries. Cal. Lab. Code § 3600(a); *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 810 (2001). As stated in *Shoemaker v. Myers*, 52 Cal. 3d 1, 16 (1990), the exclusivity rule is based upon a presumed compensation bargain:

> [T]he employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.

There is no dispute that Roy Polanco was working on his job for Macy's when he was killed. [UF 1] So, the exclusive remedy of workers' compensation bars plaintiffs' claims against Macy's unless the power press exception applies here.

## 4.   PLAINTIFFS CANNOT PROVE THAT THE POWER PRESS EXCEPTION SET FORTH IN LABOR CODE SECTION 4558 APPLIES

### 4.1   Plaintiffs Must Prove Their Claims Satisfy the Narrow Power Press Exception to Workers' Compensation Exclusivity in Section 4558

Plaintiffs assert that their claims are not barred by the exclusive remedy doctrine because they fit within the exception for injuries caused by employer-modified power presses that is established in Labor Code §4558. However, plaintiffs do not fit within this exception because the machine at issue does not fit the statutory

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

5

definition of a power press in subdivision (a)(4) of the statute, and plaintiffs cannot meet the other requirements for application of the exception that are laid out in subdivision (b) of the statute.  Plaintiffs' claims, therefore are barred by the exclusive remedy of workers' compensation.

Cal. Lab. Code § 4558(a)(4) states:  "Power press" means any material-forming machine that utilizes a die which is designed for use in the manufacture of other products.   Subsection (b) states:

> An employee, or his or her dependents in the event of the employee's death, may bring an action at law for damages against the employer where the employee's injury or death is proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press, and this removal or failure to install is specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death.

Section 4558 is one of only four exceptions to workers' compensation exclusivity that were preserved during the 1982 reform of California's workers' compensation system.  *See Jones v. Keppeler*, 228 Cal. App. 3d 705, 709 (1991)  ("In the final legislative package there were only four circumstances under which a worker could bring a civil action against the employer, including the power press exception at issue here.").  As a result, "the power press exception to the workers' compensation exclusivity rule in section 4558 must be narrowly construed." *LeFiell Manufacturing Co. v. Superior Court*, 55 Cal. 4th 275, 286 (2012).

In addition, plaintiffs bear the burden of proving that the power press exception applies to their claims. *See, e.g., Jones*, *supra*, at p. 708 (1991) ("An employer's liability under section 4558 is predicated upon **the employee proving** the manufacturer of the power press provided for and conveyed information about a point of operation guard." (emphasis added)); *Swanson v. Matthews Prods.*, 175 Cal. App. 3d 901, 908 (1985) ("To meet the requirements of section 4558, **a plaintiff must also show** that the  employer specifically authorized the removal or noninstallation of the guard on the power press." (emphasis added)).

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

6

Plaintiffs here must prove (1) the injury or death was proximately caused by the employer's knowing removal of, or knowing failure to install, a point of operation guard on a power press; and (2) this removal or failure to install was specifically authorized by the employer under conditions it knew created a probability of serious injury or death. *See Saldana v. Globe-Weis Systems Co.*, 233 Cal.App.3d 1505, 1516 (1991).

As noted in *Ceja v. J. R. Wood, Inc.*, 196 Cal. App. 3d 1372, 1377 (1987) Section 4558 is intended to address situations where the employer acted in disregard of worker safety and removed or failed to install appropriate guards on large power tools:

> Many of these power tools are run by large mechanical motors or hydraulically. (Cal. Admin. Code [(now Cal. Code Regs.)], tit. 8, § 4188.) These sorts of machines are difficult to stop while they are in their sequence of operation. Without guards, workers are susceptible to extremely serious injuries. For this reason, the Legislature passed section 4558, subdivision (b), which subjects employers to legal liability for removing guards from powerful machinery where the manufacturer has designed the machine to have a protective guard while in operation.

As further noted in *Award Metals, Inc. v. Superior Court,* 228 Cal. App. 3d 1128, 1134 (1991):

> From the plain language of section 4558, it is clear that an exception to the exclusivity of workers' compensation only arises for a power press injury where the employer has been expressly informed by the manufacturer that a point of operation guard is required, where the employer then affirmatively removes or fails to install such guard, and where the employer does so under conditions known by the employer to create a probability of serious injury or death.

## 4.2   The Baler Does Not Meet Section 4558's Definition of a Power Press

Section 4558's definition of "power press" embraces four elements. "The power press itself is a machine. It is a machine that forms materials. The formation of materials is effectuated with a die. Finally, the materials being formed with the die are being formed in the manufacture of other products." *Ceja, supra,* at p. 1376.  A "die" is a "tool that imparts shape to material by pressing or impacting against or

1  through the material, that is, by punching, stamping, or extruding." *Rosales v.*

2  *Depuy Ace Medical Co.*, 22 Cal. 4th 279, 285 (2000); *see also Moreno v. Alstom*

3  *Power*, 365 Fed. Appx. 861, 863 (9th Cir. 2010) ("neither the conveyor belt nor the

4  taper band and edge shoes impart shape by 'punching, stamping, or extruding' force

5  upon the wallboard, and thus cannot constitute a 'die' within the meaning of section

6  4558," citing *Rosales*).

7      *Rosales* is the most important case interpreting Section 4558. The opinion

8  gives a lengthy analysis of the statute, explaining that the Legislature intended to

9  limit this exception not to power presses generally, but to a <u>limited subset of power</u>

10 <u>presses</u>, specifically emphasizing the importance of the term "die" for purposes of

11 understanding this narrow exception to workers' compensation exclusivity:

> In defining a "power press," for purposes of section 4558, in terms of a "die," the Legislature patently intended to embody the characteristic that differentiates "press[es]" from other "material-forming machine[s]," i.e., the use of a tool that imparts shape to material by pressing or impacting against or through the material, that is, by punching, stamping or extruding.
>
> That the definition of "power press" promulgated by the Occupational Safety and Health Standards Board (Cal. Code Regs., tit. 8, § 4188, subd. (b)), upon which the appellate court below relied, may be broader than that in section 4558 in its inclusion of other "tools" as well as dies is of no significance in interpreting section 4558. The Occupational Safety and Health Standards Board is not charged with enforcing section 4558's exception to workers' compensation exclusivity. Nor was that board's definition of power press promulgated under the authority of section 4558 or as a purported interpretation of that statute; rather, the cited authority for the regulation was Labor Code section 142.3, which merely grants the board the power to adopt occupational safety and health standards. In any event, section 4558 provides its own definition of "power press" – a definition that limits the category to machines using dies.

23 *Rosales, supra*, at p. 286. The Balewell Baler at issue here is one of those "other

24 material forming machines" that is ***not*** within the scope of Section 4558's narrow

25 exception to workers compensation exclusivity.

26      *Moreno* applies the analysis of *Rosales* to hold that workers' compensation ex-

27 clusivity barred Moreno's claims arising from his injury at work cleaning a pulley

28 that drives a conveyor belt used in the manufacture of wallboard:

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

8

> Mr. Moreno's injury did not result from the removal of, or the failure to install, a point of operation guard on a power press. The pulley and conveyor belt assembly on which Mr. Moreno was injured is not a "power press" within the meaning of section 4558(b).... Moreno argues that the conveyor belt assembly constitutes a "power press" because the conveyor belt, taper band and edge shoes impart shape to the edges of the wallboard as it moves down the conveyor belt.
>
> However, neither the conveyor belt nor the taper band and edge shoes impart shape by "punching, stamping, or extruding" force upon the wallboard, and thus cannot constitute a "die" within the meaning of section 4558.

*Moreno, supra*, at p. 863 (citing *Rosales*).

The clear import of the language of *Ceja*, *Rosales* and *Moreno* is that the in order for a machine to be a power press within the meaning of section 4558, it must contain a die; the material passed through the machine must be permanently altered in shape; and resulting item must become art of some other product. The baler at issue here fails to satisfy all three of these requirements.

## 4.3   The Baler Does Not Contain a Die

*Rosales v. Depuy Ace Medical Co.* (2000) 22 Cal.4th 279, at pp. 284-286, defines a die, for the purposes of section 4558, as follows:

> First, they impart form to the material by impact or pressure against the material, rather than along the material. Second, they impart to the material some version of the die's own shape. The two characteristics are logically related, since the die, acting by impact against the material, can only alter the form of the material where it impacts it, necessarily leaving an impression or cutout of its own shape (unlike a linear cutting blade that, moving along the surface of the material, can be directed to cut out any desired shape). . . . In all its pertinent uses, … the term 'die' refers to a tool that imparts shape to material by pressing or impacting against or through the material, that is, by punching, stamping or extruding; . . . [we] do not believe the Legislature intended the term "die" in section 4558, subdivision (a)(4) – a die used in a power press – to be understood more broadly than as a tool that imparts shape to material by pressing or impacting against or through the material, that is, by punching, stamping or extruding..."

Here, the baler does not contain any tool which imparts the shape of the tool to the cardboard by pressing or impacting against or through the cardboard by punching, stamping or extruding.  [UF 7].  Rather, the component of the baler which comes into contact with the cardboard is the plate, which is flat and imparts no

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

9

specific shape.   There is no such thing as a flat die.  [UF 9].   Therefore, the baler is not equipped with a die, as defined by *Rosales*. [UF 6].

### 4.4   The Cardboard Passed Through the Baler Is Not Permanently Altered in Shape

The baler takes the existing shape <u>out</u> of the cardboard box by flattening it for ease in disposing of the boxes.  [UF 8].  Thereafter, once the bales of cardboard have been transported to the recycler, the wires from the bales are removed and the cardboard is processed into a new raw material used as a component of other new products. [UF 8, 10, 22].   Therefore, as no <u>permanent</u> shape is imparted to the cardboard through the use of the baler, the baler cannot be a power press under the statutory definition.

### 4.5   The Bales of Cardboard Created By The Baler Are Not Part of Another Product

The bales of cardboard created by the baler are not a component of another manufactured product, as required by the code.  Rather, once the bales are received by the recycling company, the binding material is removed, and the cardboard is processed into a new raw material which is thereafter used as a component of other new products. [UF 10, 20-22].

### 4.6   There is No Uniformity In The Output of the Baler

Another characteristic of statutory power presses is uniformity: the material that is fed into the presses is in a uniform shape, so that punched or stamped product that leaves the machine also is uniform.  This facilitates use of the re-shaped material in a completed product – a piece of a car fender, or a link in a metal watch band with the watch maker's logo on it, or a metal casing for a cell phone.

The inputs and the output of the baler are not uniform.  The pieces of scrap cardboard that are fed into the baler are all shapes and sizes.  The compressing action of the Baler temporarily re-shapes these numerous, irregular pieces of cardboard into a somewhat rectangular bale, so that wire can be wrapped around it, and the resulting

package can be shipped efficiently.  But, the packages lack the uniformity of the output of a statutory power press and are unbound by the recycler before processing the used cardboard into a new raw material.

5.    **PLAINTIFFS CANNOT PROVE THAT DECEDENT'S DEATH WAS PROXIMATELY CAUSED BY THE REMOVAL OF A POINT OF OPERATION GUARD, AS REQUIRED BY SECTION 4558(b)**

Another element of the statutory exception is that the removal of the point of operation guard actually caused the injury to the worker.  Cal. Lab. Code § 4558(b) ("where the employee's injury or death is proximately caused by the employer's knowing removal of . . . a point of operation guard on a power press . . . .").  Here, plaintiffs cannot show that Macy's modification resulted in the removal of a point of operation guard, and there is no evidence that removal of the side portion of the hopper on the baler and the addition of a chute caused Roy Polanco's death.

In parsing the meaning of the term "point of operation guard" in Section 4558, the Court of Appeal in *Bingham v. CTS Corp.*, 231 Cal.App.3d 56 (1991) relied on the legislative history, administrative regulations, and dictionary definitions:

> We read the applicable sections of the Regulations as a whole to assist us in ascertaining the meaning of the term "guard," which is not defined by section 4558. [Citation.]  We avoid literal, narrow or hypertechnical meanings of words so as to give effect to the manifest objectives of the legislation which appear from the provisions considered as a whole, in light of legislative history. [Citation]
>
> The Regulations expressly require safety apparatus which effectively ensures that workers' hands and arms cannot be mangled by power presses. In particular, section 4214 of the Regulations expressly requires that press brakes be guarded in a manner which will **accomplish the goal of restraining workers from inadvertently reaching into the point of operation**. Sections 4206 and 4214 of the Regulations, when read in conjunction with sections 4207 and 4208 of the Regulations, show that the term "guard" in section 4558 is used generically to include almost any apparatus a manufacturer indicates will accomplish this purpose. Thus, a device as defined in the Regulations, as well as a point of operation guard, **serve to protect a worker's hands**.

*Id.*, at p. 65 (emphasis added).  The modification of removing the side portion of the hopper on the baler and the addition of a chute that equally prevented employees

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

11

from reaching into the baler with their arms and hands did not result in the removal of a point of operation guard. In other words, the removal of the side of the hopper and placement of a chute resulted in an apparatus/barrier being in place to accomplish the same purpose of keeping the workers from reaching into the point of operation.

*Moreno, supra,* at p. 863, also ruled that the plaintiff could not show that his injury was caused by the removal of a point of operation guard:

> Moreover, even assuming the conveyor belt assembly can be considered a "power press," Mr. Moreno was not injured as a result of the removal of, or failure to install, a point of operation guard. We assume without deciding that plaintiffs correctly define "point of operation" as "the point where the workpiece [the wallboard] and the forming apparatus [the die] come together so that the workpiece can be formed by the forming apparatus." Mr. Moreno alleges that his accident was caused by the removal of the guard for the assembly's head pulley. The head pulley is located beneath the conveyor belt at a substantial distance from the point on the belt where the wallboard is "formed." Because the head pulley is not at the assembly's "point of operation," the removal of the guard for the head pulley – the alleged cause of Mr. Moreno's injuries – does not constitute the removal of a "point of operation" guard.

Here, plaintiffs bear the burden of proving that Roy Polanco's death was caused by the removal of or failure to install a point of operation guard. However, there is is no evidence that any alleged modification to the baler – even assuming it resulted in the removal of a point of operation guard – was the proximate cause of Polanco's death.

Here, the baler was modified by Macy's by removing a portion of the hopper and adding a chute leading to the compression area. [UF 24] The photographs of the baler (Exhibits "B" through "E" and "N" through "R") show that the chute was well away from the point of operation. The removal of the side of the hopper and installation of chute was designed to facilitate the loading of cardboard pieces into the compressor chamber of the Baler. The chute also prevented workers from inadvertently reaching into the point of operation and kept the hands of workers outside the point of operation. As a result, removing a side portion of hopper and

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

12

1  installation of the chute was not a modification that resulted in the removal of a

2  point of operation guard for the baler that could bring this accident within the scope

3  of Section 4558's exception.

4      Indeed, the judge presiding over Plaintiffs' workers' compensation case against

5  Macy's previously has concluded that Plaintiffs could not prove a violation of a

6  safety order or that any violation of a safety order led to Mr. Polanco's death. In

7  addition to the death benefits they were awarded in the Workers' Compensation

8  proceedings relating to Roy Polanco's death (Case No. ADJ6881589), Plaintiffs

9  Mario Polanco and Roy A. Polanco sought increased benefits pursuant to Labor

10 Code §4553 due to alleged serious and willful misconduct by Macy's for failure to

11 have, on the baler, a "point of operation guard or cover, deadman controls or other

12 means that would positively prevent the employee from entering the zone of travel of

13 the ram while in operation," as required by Title 8, California Code of Regulations

14 section 4353. [UF 25]. The Court should note that section 4353 is part of the Code

15 of Regulations regarding balers, not power presses.

16     The workers' compensation judge stated in her Opinion on Decision that there

17 was no "serious and willful misconduct" by Macy's in connection with this incident

18 because she could not find that Macy's violated the safety order set forth in Title 8,

19 California Code of Regulations section 4353; that the violation of the safety order

20 was the proximate cause of Mr. Polanco's death; or that Macy's conduct rose to an

21 intentional act to harm Mr. Polanco by violating a safety order. [UF 26].

22     Although Plaintiffs have appealed this decision, it supports the conclusion that

23 plaintiffs cannot prove that modification of the baler by Macy's resulted in the

24 removal of a point of operation guard, or that any alleged modification to the baler

25 caused Polanco's death. Plaintiffs also have admitted in their discovery responses

26 that they have no personal knowledge that Macy's modifications to the baler

27 (including, but not limited to, the removal and/or failure to install required point of

28 operation guards) caused Roy Polanco's death, or that Macy's knew that its

G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

13

modifications to the baler (including, but not limited to, the removal and/or failure to install required point of operation guards) exposed its employees to the risk of serious injury or death.  [UF 28].

Additionally, the Los Angeles Police Department presented to the scene of Mr. Polanco's death and conducted an investigation.  It came across no evidence that Macy's intentionally and knowingly did something to the baler to cause Mr. Polanco's death, that Macy's intentionally modified the machine so as to cause Mr. Polanco's death, or that any employee of Macy's knew that the configuration of the Machine created a possibility of serious injury or death.  [UF 27].

Cal/OSHA also investigated Mr. Polanco's accident, and in the course of its investigation, could not determine how Mr. Polanco ended up in the baler, and came across no information that any Macy's employee knew that Macy's was in violation of any Cal/OSHA standard with respect to the baler. [UF 29].  Cal/OSHA, therefore, also could not and did not determine that any modification to the baler by Macy's was the cause of Mr. Polanco's death.

Thus, as Plaintiffs could not previously prove, and currently have no knowledge, that any modification to the baler (including, but not limited to, the removal and/or failure to install required point of operation guards) caused Mr. Polanco's death, and neither the Los Angeles Police Department or Cal/OSHA could reach such a conclusion following their respective investigations of the accident, Plaintiffs cannot satisfy their burden under Labor Code §4558(b).  For this reason also, the Court should enter judgment in favor of Macy's.

**6.   POWER PRESSES AND BALERS ARE REGULATED BY TWO DISTINCT STATUTORY SCHEMES AND INDUSTRY STANDARDS**

As embodied in the California Code of Regulations, the California Division of Occupational Safety and Health has promulgate two distinct sections which govern power presses and balers.  [UF 11].  Regulations concerning power presses are set

forth in 8 California Code of Regulations, Title 55, §§4189-4216.  8 CCR §4189 states that: "The requirements of this article apply only to those mechanically or hydraulically powered machines that shear, punch, form, or assemble metal or other material by means of tools or dies attached to slides, commonly referred to as power operated presses."  [UF 12]

Regulations concerning compaction equipment are set forth in 8 California Code of Regulations, Title 61, §§4350-4355.  8 CCR §4351 defines a baler as "a form of compaction equipment which compresses loose material into compact bales and secures them for binding or wrapping."  Unlike power presses, the definition of a baler does not include a die as a component thereof.  [UF 13]

Given the different definitions and statutory schemes of a power press and a baler, a baler is not considered to be a power press under the California Code of Regulations by the California Division of Occupational Safety and Health.  [UF 14]. An executive agency's interpretation of a statute within its purview is entitled to "great weight." *E.g., NLRB v. Bell Aerospace Co. Div. Textron Inc.*, 416 U.S. 267, 274-75 (1974).  Therefore, the baler at issue here cannot be deemed a power press as it is statutorily distinct from a power press under the California Code of Regulations.

Balers are also distinct from power presses under the relevant industry standards.  The American National Standards Institute (ANSI) is a voluntary organization that promulgates the manufacturing standards for machines, including power presses and balers, to which all manufacturers adhere in their manufacture of machines. [UF 15].  ANSI has promulgated three separate standards which encompass all power presses: B11.1 [mechanical power presses], B11.2 [hydraulic power presses], B11.3 [press brakes].  [UF 16].  All of these three standards contain a definition of a die.  The definition of a die in B.11.1 (at section 3.23) and B.11.2 (at section 3.11) is identical: "the tooling used in a press for shearing, punching, forming, drawing or assembling metal or other materials."  The definition in B.11.3

(at section 3.11) is similar: "The tooling used in a press brake to form the material." [UF 17].

ANSI has two separate standards for stationary compactors (Z245.2) and baling equipment (ANSI Z245.5). Neither of these standards contains a definition of a die or refers to a die as being a component of a baler or a paper box compactor. [UF 18]. ANSI, therefore, does not consider stationary compactors or other baling equipment to be a power press. [UF 19]

As neither the California Division of Occupational Safety and Health, the relevant governing body, nor ANSI, the relevant industry regulation, consider a baler to be a power press, the Court should reach an identical conclusion, and enter judgment in favor of Macy's on all of Plaintiffs' claims.

## 7.   CONCLUSION

For all the foregoing reasons, the Court should enter judgment in favor of Macy's on all claims.


Dated: March 8, 2013                     MANNING & KASS
                                         ELLROD, RAMIREZ, TRESTER LLP


                                         By:   /s/ Jeffrey M. Lenkov
                                              Jeffrey M. Lenkov
                                              Sevan Gobel

                                         Attorneys for Defendant Macy's
                                         Logistics and Operations, an
                                         unincorporated division of Macy's
                                         Corporate Services, Inc.


G:\docsdata\JML\Polanco v. East Chicago Machine Tool Corp. (Macy's)\Pldgs\MSJ Final\MSJ Final.wpd

16